IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:16-cr-00171-JO |
| v. | ) | |
| | ) | |
| JAZMAN ANTOINE MOORE, | ) | OPINION & ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

JONES, District Judge,

Defendant is charged with violating 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm. The matter is before the court on defendant's motion to suppress evidence obtained by police during a traffic stop. [# 45] Defendant contends that he was seized and his vehicle was searched in violation of his Fourth Amendment rights. I heard testimony and received exhibits at an evidentiary hearing on December 20, 2016. Based on that evidence and the arguments of the parties I make the following findings of fact and conclusions of law.

In sum, the police officers conducted a legal traffic stop and received voluntary consent from defendant to search him and his vehicle. The defendant's motion is DENIED.

## BACKGROUND

On the night of March 4, 2016, Portland Police Bureau Officers Hughes and Sherwood of the Gang Enforcement Team were patrolling an area of Northeast Portland when they observed a

-1-    OPINION & ORDER

Cadillac proceeding on a city street without illuminated taillights in violation of state traffic laws. The officers initiated a traffic stop. Officer Sherwood approached the driver side of the Cadillac and spoke to defendant. Officer Hughes approached the passenger side of the vehicle and spoke to the passenger, Xavier Theole. Officer Sherwood requested defendant's driver's license, vehicle registration, and proof of insurance. Defendant responded that his driver's license was suspended and he did not have a vehicle registration or proof of insurance.

Officer Sherwood returned to the patrol vehicle where he conducted a record check which confirmed that defendant's license was suspended and revealed that defendant was a documented member of the Loc'd Out Piru Blood gang. Officer Hughes remained at the passenger side of the Cadillac where Mr. Theole told him that he was on parole for armed robbery.

At this time, PPB Gang Enforcement Team Officers Fender and Polas arrived in a second patrol vehicle. Officer Polas recognized defendant from previous interactions with him and knew that he was a documented Loc'd Out Piru Blood gang member. He recalled that defendant had been shot during a gang related incident within the last year. The officers were aware that Portland had seen an increase in gang related violence during 2015 and that gang members often possessed firearms as a means of protection and to further the criminal purposes of their gangs. Officers Sherwood, Hughes and Polas each independently concluded it was necessary for their own safety to ask defendant if he had firearms in the Cadillac.

Officer Polas approached defendant and asked if there were any weapons in the vehicle. Defendant said there were not. Officer Polas asked if he could search the vehicle and defendant consented. Officer Polas informed Officer Hughes that defendant had consented to a search of his car. Officer Hughes asked defendant again if there were weapons in the car. Defendant again denied

-2-    OPINION & ORDER

having any weapons. Officer Hughes asked again if it was okay to search the car, and defendant confirmed his consent. Officer Hughes asked if he could search defendant's person, and defendant consented. Officer Hughes then instructed defendant to get out of the car with his hands on his head, and defendant complied.

While Officer Hughes was patting defendant down, defendant dropped his hands, lowered his head, began breathing heavily, and hunched over. He said he was experiencing a panic attack. After completing the pat down, Officer Hughes suggested defendant move to the sidewalk to get out of the traffic on the roadway. Defendant asked to use his cell phone to call his mother. Officer Hughes retrieved the phone from defendant's car and told defendant to call from the sidewalk. When defendant did not move, Officers Hughes and Polas took him by the arms and escorted him to the curb.

After defendant moved to the sidewalk, Officer Polas observed a small plastic bag containing a white substance that looked like crack cocaine on the street where defendant had stood after exiting his vehicle. Defendant watched Officer Sherwood collect the plastic bag and without being prompted said that the bag contained a mixture of cocaine and Percocet. Officer Sherwood field tested the substance and received a positive result for cocaine.

Officers Polas and Sherwood then searched the Cadillac. While crouching down to see under the driver's seat, Officer Polas saw the magazine and handle of a firearm protruding from beneath the center console, just to the right of the driver's seat. Officer Polas retrieved the firearm which was a Ruger 9mm, model SR9C. Its serial number matched that of a firearm that had been stolen in December 2015.

Officer Hughes read Mr. Theole his *Miranda* rights and Mr. Theole indicated he understood

them. Mr. Theole said he had never been in the Cadillac before and he denied having knowledge of the firearm or the cocaine. Officer Hughes asked Mr. Theole if his DNA would be found on the firearm. Mr. Theole said it would not and consented to a DNA swab.

Officer Hughes read defendant his *Miranda* rights and defendant indicated he understood them. Defendant said he had recently purchased the Cadillac and that the day before he bought it, the seller had shown him a firearm. Defendant said he handled the firearm but denied keeping it. Defendant also consented to a DNA swab.

Officers Hughes and Sherwood knew from experience that gang members often take pictures of themselves with firearms. Officer Hughes asked defendant and Mr. Theole if he could search their cell phones, and they both consented. On Mr. Theole's cell phone, Officer Hughes found photographs of defendant holding what appeared to be the same firearm found in the car.

Officer Hughes told defendant the cell phones would be seized. Defendant then asked if he could keep his cell phone if he admitted the firearm was his. Defendant then admitted that he carried a firearm for protection because he was a target of rival gang members and felt unsafe without one. Defendant said Mr. Theole did not know about the firearm. Defendant also said he used a mixture of cocaine and Percocet for the constant pain he experienced since being shot.

Officer Sherwood obtained confirmation from both Mr. Theole and defendant that each consented to have DNA swabs taken. He then collected oral DNA swabs from them. A laboratory analysis later revealed that the DNA on the firearm came from four contributors. A comparison of the DNA taken from Mr. Theole excluded him as a predominant contributor. The analysis could not exclude defendant as a predominant contributor.

## STANDARDS

The Fourth Amendment protects against unreasonable searches and seizures by the government and applies to searches and seizures by state law enforcement officers through the Fourteenth Amendment. *Elkins v. United States*, 364 U.S. 206, 213 (1960). The temporary detention of a person during a vehicle stop by police is a seizure of that person within the meaning of the Fourth Amendment, and subject to the requirement that it be reasonable under the circumstances. *Whren v. United States*, 517 U.S. 806, 809-810 (1996).

Searches and seizures conducted without a warrant issued by a judicial officer upon a showing of probable cause are unreasonable subject to a few specific exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is that police officers who observe a traffic violation may conduct a warrantless traffic stop to investigate that violation. The scope of such a detention must be tailored to address the underlying traffic violation and attend to related safety concerns and can become unlawful if unrelated inquiries prolong the duration of the roadside detention beyond what is reasonably necessary to complete the purposes of the stop. *Rodriguez v. United States*, 135 S.Ct. 1609, 1614-1615 (2015); *Illinois v. Caballes*, 533 U.S. 405, 407-408 (2005). Another established exception to the warrant and probable cause requirements is that a search authorized by consent is constitutionally permissible. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *United States v. Patayan Soriano*, 361 F.3d 494, 501 (9th Cir. 2003).

## DISCUSSION

Defendant argues that the police violated his Fourth Amendment rights when they requested that he exit his vehicle because they did not have a reasonable suspicion that he was involved in any criminal activity other than the traffic violation for which he was stopped. He contends the officers

-5-    OPINION & ORDER

exceeded the reasonable scope of the traffic stop to conduct an investigation into other unrelated crimes without reasonable suspicion that any other crime had been committed. He further argues that the police officers based their suspicion of other criminal activity solely on his race and ethnic appearance in violation of the Equal Protection Clause of the Fourteenth Amendment.

## I.    Lawful Traffic Stop

Officers Sherwood and Hughes initiated a lawful traffic stop because they observed defendant operating his car after dark without lighting equipment required by Oregon statutes. Defendant does not challenge the initial traffic stop in his present motion. Instead, he argues that the officers detoured from the purpose of the traffic stop to investigate unrelated crimes without reasonable suspicion or probable cause.

When making a routine traffic stop, the permissible scope of inquiry by law enforcement officers includes determining whether to issue a traffic ticket, checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the vehicle registration and proof of insurance. *Rodriguez*, 135 S.Ct. at 1611. In addition, an officer may make unrelated inquiries during a lawful traffic stop, so long as they do not measurably increase the duration of the stop. 135 S.Ct. at 1615. Officer Sherwood was in his patrol car engaged in a records check when Officer Polas asked for and received defendant's consent to search the Cadillac and Officer Hughes asked for and received defendant's consent to pat him down for weapons. Their inquiries about weapons and requests for consent to search did not prolong the duration of the detention beyond the time necessary to perform the permissible purposes of the traffic stop.

In addition to the inquiries related to the purpose of the traffic stop, law enforcement officers may attend to reasonable concerns for their own safety. In the interest of officer safety, the driver

-6-    OPINION & ORDER

and passengers of a vehicle that has been lawfully stopped for a traffic violation can be required to

exit the vehicle. 135 S.Ct. at 1615 citing *Pennsylvania v. Mimms*, 434 U.S. 106, 110-111 (1973) and

*Maryland v. Wilson*, 519 U.S. 408, 413-415 (1997). Accordingly, the officers request for consent

to search defendant and his vehicle and their request that he exit the vehicle were constitutionally

permissible inquiries incident to the lawful traffic stop.

## II.    Consent

In establishing the validity of consent to search, the government bears the burden of showing

that consent was freely and voluntarily given. *Schneckloth*, 412 U.S. at 222; *United States v. Chan-*

*Jimenez*, 125 F.3d 1324, 1327 (9th Cir. 1997). Voluntariness is determined from the totality of the

circumstances. *Schneckloth*, 412 U.S. at 227; *Chan-Jimenez*, 125 F.3d at 1327. In this inquiry, the

court must consider any indications of coercion, including such factors as whether the defendant was

in custody, whether the police officers had drawn their guns, whether *Miranda* warnings were given,

whether the defendant was informed that he had the right to refuse consent, and whether the

defendant was told that a search warrant could or would be obtained. *United States v. Cormier*, 220

F.3d 1103, 1112 (9th Cir. 2000).

The totality of the circumstances here leave no doubt that defendant's consent was voluntary.

He was not under arrest or threatened with being arrested when Officers Polas and Hughes obtained

consent to search his car and his person. None of the officers had drawn weapons. The officers did

not claim that they could obtain a search warrant. The evidence suggests that defendant consented

freely and voluntarily without coercive external pressure. The same is true of defendant's later

consent to the search of his telephone for pictures and to the taking of oral DNA swabs. Although

the likelihood of arrest had become apparent by then, both defendant and Mr. Theole had been read

their *Miranda* rights and said they understood them. Notably, defendant does not challenge the voluntariness of his consent in his present motion.

## III.    Automobile Exception

A law enforcement officer may conduct a warrantless search of a motor vehicle if there is probable cause to believe that the vehicle contains evidence of a crime. *United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010). Here, after defendant got out of his car, officers observed in plain view a small plastic bag of white powder which defendant admitted was a cocaine mixture that belonged to him. Under these circumstances, the officers had probable cause to believe that the car contained contraband or other evidence that defendant possessed a controlled substance. *See United States v. Fowlkes*, 804 F.3d 954, 971 (9th Cir. 2015) (warrantless search of vehicle lawfully stopped for a traffic violation was justified because officers saw an apparent controlled substance in plain view on the driver's seat). Accordingly, even if defendant's consent was not valid, the officers had an alternative lawful basis to search his vehicle

## IV.    Officer Safety

As noted before, an officer engaged in a lawful traffic stop may take "negligibly burdensome precautions in order to complete his mission safely." *Rodriguez*, 135 U.S. at 1616. An officer is permitted to search the passenger compartment of a motor vehicle, limited to the places in which a weapon may be hidden, if the officer has a reasonable belief that an occupant of the car is dangerous and may gain immediate control of weapons. *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). Here the officers knew that defendant was a member of a gang known to engage in violent acts, that gang members often carry firearms for protection, that defendant had been the victim of a shooting in the past, and that Mr. Theole was on parole for a violent crime. These circumstances reasonably

supported their suspicion that the vehicle contained a weapon and that defendant or Mr. Theole could

pose a danger to the officers unless they conducted a protective search of the passenger compartment

to determine whether weapons were present.   The reasonable suspicion that weapons were present

in the car and the officers' concern for their own safety provide another alternative justification for

their search, even if defendant had not consented.

## V.    Equal Protection

I have reviewed the exhibits submitted by defendant, including the video of Laurie Palmer's

interactions with the officers at the scene.  I find no factual basis for defendant's claim that he was

stopped or searched or arrested because of his race, ethnic appearance or identity.

### CONCLUSION

For the foregoing reasons, defendant's motion to suppress [# 45] is DENIED.

IT IS SO ORDERED.

DATED this **26** day of December, 2016.

Robert E. Jones
United States District Judge

-9-    OPINION & ORDER